**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NEW PIG CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:16-cv-140 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ULINE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT,
FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION,
AND UNFAIR COMPETITION**

NOW comes Plaintiff, New Pig Corporation ("NEW PIG" or "Plaintiff"), by and through

its counsel, upon information and belief, avers the following for its Complaint against Defendant

Uline, Inc. ("ULINE" or "Defendant"):

**I. NATURE OF THE ACTION**

1.      This is an action for trademark infringement, false designation of origin,

trademark dilution, and unfair competition, arising under the Federal Trademark Act of 1946, as

amended, commonly known as the Lanham Act, 15 U.S.C. §§1051 et seq., and the statutes and

common law of the Commonwealth of Pennsylvania.  NEW PIG seeks permanent injunctive

relief as well as other equitable relief and compensatory and punitive damages arising from

ULINE's willful, unlawful, intentional, unfair, and misleading conduct and unjust enrichment.

**II. THE PARTIES**

2.      NEW PIG is a corporation duly organized under the laws of Pennsylvania having

a principal place of business at One Pork Avenue, Tipton, Pennsylvania 16684.

3.     ULINE is a corporation duly organized under the laws of Delaware having a principal place of business at 12575 Uline Drive, Pleasant Prairie, Wisconsin 53158.

4.     ULINE maintains an office in Pennsylvania at 400 Boulder Drive Breinigsville, PA 18031 and upon information and belief conducts regular ongoing business in this judicial district and interstate relating to the operation and sales of packaging, shipping, industrial and janitorial products.

### III. JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter and parties of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§1331, 1338(a) and (b), and under the principle of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

6.     Venue is proper in this judicial district under 28 U.S.C. § 1332, 1391(b) and (c), and 1400(b) and because ULINE is subject to personal jurisdiction in this judicial district and the amount in controversy is in excess of $75,000.

### IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.     Since 1985, NEW PIG has been in the business of manufacturing industry leading industrial absorbent products, including but not limited to, absorbent mats and pads, absorbent socks and booms, absorbent pillows and pans, absorbent wipes and wipers, towels, and rags and absorbent drum and barrel top mats.  NEW PIG also offers a variety of products in areas of spill kits, leak control, drain protection, safety, waste reduction, cleaning and janitorial, healthcare fluid management, and training.  The NEW PIG brand has become iconic for producing high-quality industrial absorbent and related products.  Over the past three-plus decades, NEW PIG has received twenty-nine (29) Plant Engineering Product of the Year awards – more than any other company in the industry.

8.      NEW PIG sells various industrial products including absorbent mats, pads, pillows, socks, booms and disposable bags under its "Pig" family of trademarks.  NEW PIG is the owner of several federally registered trademarks, including **PIG**, , and .

The **PIG**, , and  Marks will be collectively referred to herein as the "**Pig Marks**."

9.      Since as early as 1986, NEW PIG has been using the marks **PIG** and  in connection with its products and services in the industrial absorbent industry.  Since as early as 2012, NEW PIG has been using the mark  in connection with its products and services in the industrial absorbent industry.  Over the years, NEW PIG has spent tens of millions of dollars advertising and promoting its products in the industrial absorbent industry bearing the **Pig Marks**.  NEW PIG has thereby generated extensive goodwill in connection with its products and services and the purchasing public has come to know, rely upon, and recognize the **Pig Marks** as indicating a source of high-quality and reliable goods and services in the industrial absorbent industry.

10.     The **Pig Marks** have thus come to be associated with and represent the significant goodwill that NEW PIG has developed in connection with its products and services in the industrial absorbent industry.

11.     NEW PIG is the owner of U.S. Trademark Registration No. 1,429,718 filed on July 21, 1986 and registered February 24, 1987, for the mark and design  in connection

with goods and services in International Class 001 described as "ELONGATE TUBULAR OIL ABSORBENT MEMBERS FOR PLACING ABOUT THE BASES OF MACHINES TO COLLECT OIL AND OTHER LIQUID WASTE." The '718 Mark is owned by New Pendulum Corporation which is the parent company of New Pig. New Pig is the exclusive licensee of the '718 Mark with the right to sue. A copy of this U.S. Trademark Registration is attached hereto as Exhibit A.

12.     U.S. Trademark Registration No. 1,429,718 for the  mark and design is incontestable pursuant to the provisions of 15 U.S.C. § 1065.

13.     NEW PIG is the owner of U.S. Trademark Registration No. 1,429,719 filed on August 7, 1986, and registered February 24, 1987, for the mark **PIG** in connection with goods and services in International Class 001 described as "ELONGATE TUBULAR OIL ABSORBENT MEMBERS FOR PLACING ABOUT THE BASES OF MACHINES TO COLLECT OIL AND OTHER LIQUID WASTE." The '719 Mark is owned by New Pendulum Corporation which is the parent company of New Pig. New Pig is the exclusive licensee of the '719 Mark with the right to sue. A copy of this U.S. Trademark Registration is attached hereto as Exhibit B.

14.     U.S. Trademark Registration No. 1,429,719 for the **PIG** mark is incontestable pursuant to the provisions of 15 U.S.C. § 1065.

15.     NEW PIG is the owner of U.S. Trademark Registration No. 2,790,645 filed on September 3, 2002 and registered December 9, 2003,  for the mark **PIG** in connection with goods and services in several International Classes including International Class 004 for "PETROLEUM-BASED   ABSORBENT   AND   ADSORBENT   COMPOSITIONS   FOR

SORBING LIQUIDS IN INDUSTRIAL WORK SPACES."  The '645 Mark is owned by New Pendulum Corporation which is the parent company of New Pig.  New Pig is the exclusive licensee of the '645 Mark with the right to sue.  A copy of this U.S. Trademark Registration is attached hereto as Exhibit C.

16.     U.S. Trademark Registration No. 2,790,645 for the **PIG** mark is incontestable pursuant to the provisions of 15 U.S.C. § 1065.

17.     NEW PIG is the owner of U.S. Trademark Registration No. 4,063,879 filed on October 27, 2009 and registered November 29, 2011, for the mark **PIG** in connection with goods and services in International Class 022 for, among other goods, " POLYMERIC BAGS FOR INDUSTRIAL AND COMMERCIAL USE, NAMELY, BAGS FOR LIFTING AND TRANSPORTING EQUIPMENT AND DRUMS."  The '879 Mark is owned by New Pendulum Corporation which is the parent company of New Pig.  New Pig is the exclusive licensee of the '879 Mark with the right to sue.  A copy of this U.S. Trademark Registration is attached hereto as Exhibit D.

18.     NEW PIG is the owner of U.S. Trademark Registration No. 4,180,269 filed on February 9, 2011 and registered July 24, 2012, for the mark **PIG** in connection with goods and services in several International Classes including International Class 016 for, among other goods, "GENERAL PURPOSE PLASTIC BAGS FOR HOUSEHOLD USE, NAMELY, BAGS WITH ABSORBENT LININGS USED TO ABSORB LIQUIDS WHEN SECURED ADJACENT TO LEAKING ARTICLES."   The '269 Mark is owned by New Pendulum Corporation which is the parent company of New Pig.  New Pig is the exclusive licensee of the '269 Mark with the right to sue.  A copy of this U.S. Trademark Registration is attached hereto as Exhibit E.

19.     NEW PIG is the owner of U.S. Trademark Registration No. 4,548,021 filed on

November 11, 2011 and registered June 10, 2014, for the mark and design in

connection with goods and services in several International Classes including International Class

027 for, among other goods, "ABSORBENT POLYPROPYLENE MATS FOR COMMERCIAL

AND    INDUSTRIAL    USE    IN    ABSORBING    LIQUID    SPILLS    AND    LEAKS;

POLYURETHANE MATS FOR SEALING OFF GRATES, DRAINS, STORM DRAINS AND

MANHOLES AGAINST PASSAGE OF SURFACE LIQUIDS; GROUND COVERINGS,

NAMELY, POLYPROPYLENE FLOOR COVERING AND GROUND COVERING IN THE

NATURE OF POLYPROPYLENE FLOOR COVERING WITH TEXTILE AND BARRIER

FILM LAYERS; TEXTILE FLOOR MATS; ABSORBENT POLYPROPYLENE MATS."   The

'021 Mark is owned by New Pendulum Corporation which is the parent company of New Pig.

New Pig is the exclusive licensee of the '021 Mark with the right to sue.  A copy of this U.S.

Trademark Registration is attached hereto as Exhibit F.

20.     NEW PIG is the owner of U.S. Trademark Registration No. 4,860,482 filed on

May 6, 2014 and registered November 24, 2015, for the mark and design in connection

with goods and services in several International Classes including International Class 004 for,

among    other    goods,    "PETROLEUM-BASED    ABSORBENT    AND    ADSORBENT

COMPOSITIONS    FOR    SORBING    LIQUIDS;    LOOSE    GRANULATED    POLYMERIC

ABSORBENT MATERIALS, NAMELY, GRANULAR ABSORBENT PETROLEUM-BASED

COMPOSITIONS FOR ABSORBING SPILLS FROM FLOORS."   The '482 Mark is owned by

New Pendulum Corporation which is the parent company of New Pig.  New Pig is the exclusive

licensee of the '482 Mark with the right to sue.  A copy of this U.S. Trademark Registration is attached hereto as Exhibit G.

21.     In or about May 2016, NEW PIG learned that ULINE, without authorization from NEW PIG, has used "Pig Mat" as a search term on its website, www.uline.com, and has used the terms "Pig Mat", "pig", "pigmat" and "pigmats" as metatags on its website (the "Pig Metatags"). Attached as Exhibit H are a printout from a Google search using the term "pig mat", a printout of the Uline website showing the results of a search using the term "Pig Mat", and printouts of the Pig Metadata from the Uline website.  As a result of these unauthorized uses of NEW PIG's PIG trademark, Internet users are being misdirected to the ULINE website, wherein ULINE offers absorbent products in direct competition with NEW PIG's products.  Customers and potential customers are suffering initial interest confusion, and are likely to be confused into believing that ULINE and/or its products are affiliated with or sponsored by NEW PIG.

22.     On May 25, 2016, counsel for NEW PIG sent a cease-and-desist letter to ULINE requesting that ULINE immediately do the following: (a) remove the Pig Mat search term from your website and any other search terms including the word "pig";  (b) remove all Pig Metatags from your website, including, but not limited to, the words "Pig Mat", "pig", "pigmat" and "pigmats"; (c) refrain from all other unauthorized uses of the "Pig" trademark, and any other designations confusingly similar thereto; (d) refrain from taking or filling any orders for absorbent products from your website that were made during your unauthorized use of the "Pig Mat" search term and Pig Metatags; (e) provide us with web analytic information from your website including the number of visitors to your website during your unauthorized use of the Pig Mat search term and Pig Metatags, the number of searches performed on your website using the "Pig Mat" search term and any other search terms using the word "pig", and the number of

visitors to your website that purchased absorbent products after using "Pig Mat" or any other search term using the word "pig"; and (g) provide us with a full accounting of all sales of absorbent products made by Uline during your unauthorized use of the Pig Mat search term and Pig Metatags, including the number and dollar amount of such sales.  A true and correct copy of the letter is attached hereto as Exhibit I.

22.     On June 1, 2016, corporate counsel for ULINE wrote to counsel for NEW PIG and stated, in part, as follows:

> Additionally, we have taken steps to ensure that keywords are not inserted into keyword ads and we have removed the term "pig" from meta keywords of relevant pages.

> A true and correct copy of the letter is attached hereto as Exhibit J.

23.     Despite the assurances contained in the June 1, 2016 letter, ULINE has not ceased using "Pig Mat" as a search term on its website, www.uline.com, and has used the term "pig" as a metatag on its website (the "Pig Metatags").  Attached as Exhibit K are a printout from a Google search using the term "pig mat", a printout of the Uline website showing the results of a search using the term "Pig Mat", and printouts of the Pig Metadata from the Uline website which were all captured *after* ULINE's counsel stated that they had taken steps to remove these infringing items.  Importantly, ULINE does not sell or offer for sale any "Pig" products but does sell competing absorbent, spill control, and mat products.

24.     ULINE's copying and use of marks that are identical to or almost identical to the **Pig Marks** is intended to cause and has caused confusion in the marketplace that ULINE and ULINE's products originate, are sponsored by, or are otherwise affiliated with NEW PIG because of the identical marks used by NEW PIG and ULINE.  In addition, ULINE's use of the **Pig Marks** as search terms, meta tags, keyword tags, and keyword ads creates an initial interest confusion among consumers as to the origin and/or affiliation of ULINE and ULINE's products

and allows ULINE to improperly trade off and benefit from the extensive goodwill that NEW PIG has built up over decades in its **Pig Marks**.

25.     Unless the relief requested herein by NEW PIG is granted, NEW PIG will suffer further serious, immediate, and irreparable harm, including, but not limited to, customer confusion, and loss of goodwill.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT PURSUANT TO 15 U.S.C. § 1114**

26.     NEW PIG repeats and realleges the averments contained in paragraphs 1 through 25 of this Complaint as if fully stated herein.

30.     The **Pig Marks** are valid and subsisting and provide NEW PIG with the right to use the **Pig Marks** in commerce in the United States, the Commonwealth of Pennsylvania, and this Judicial District.

31.     ULINE has infringed the **Pig Marks** in interstate commerce, in the Commonwealth of Pennsylvania and within this Judicial District by various acts, including using marks that are reproductions, copies, or colorable imitations of the **Pig Marks** in connection with the sale, offering for sale, distribution, and/or advertising of the ULINE products, all in violation of 15 U.S.C. §1114(1)(a).

32.     ULINE's use of marks that are identical to or almost identical to the **Pig Marks** is without permission or approval of NEW PIG and such use by ULINE has caused and is likely to cause confusion, to cause mistake, and to deceive consumers as to the source of origin of the products.

33.     ULINE's use of the **Pig Marks** as search terms, meta tags, keyword tags, and keyword ads creates an initial interest confusion among consumers as to the origin and/or affiliation of ULINE and ULINE's competing absorbent, spill control, and mat products and

allows ULINE to improperly trade off and benefit from the extensive goodwill that NEW PIG has built up over decades in its **Pig Marks** and creating confusion, thus irreparably injuring NEW PIG.

34.     Upon information and belief, ULINE's continued use of marks that are identical to or almost identical to the **Pig Marks** is with the deliberate intention of trading on and benefiting from the valuable reputation and goodwill established in the **Pig Marks** and gives the false impression that ULINE is associated with NEW PIG.

35.     NEW PIG has no control over the quality of the products offered and sold by ULINE and, because of the confusion as to the source and false association with NEW PIG engendered by ULINE, NEW PIG's valuable goodwill in respect to the **Pig Marks** is at the mercy of ULINE unless such use is preliminarily and permanently enjoined.

36.     ULINE's use of marks that are identical to or almost identical to the **Pig Marks** is a deliberate, knowing, and willful infringement of NEW PIG's statutory rights in the **Pig Marks**. Such acts have been undertaken in reckless and willful disregard for NEW PIG's rights in the **Pig Marks** and have been designed specifically to trade upon the goodwill associated with the **Pig Marks**.

37.     NEW PIG has been, and is likely to continue to be, irreparably harmed and damaged by ULINE's acts of trademark infringement if ULINE is not restrained, in that NEW PIG has suffered and is likely to suffer loss of reputation and destruction of goodwill each time that its customers and members of the general public believe that the products of ULINE are provided, operated, sponsored, endorsed, authorized, recommended, or warranted by NEW PIG, and NEW PIG has no adequate remedy at law.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN PURSUANT TO 15 U.S.C. § 1125(a)**

38.     NEW PIG repeats and realleges the averments contained in paragraphs 1 through 37 of this Complaint as if fully stated herein.

39.     ULINE's use of marks that are identical to or almost identical to the **Pig Marks** in connection with selling ULINE products creates the false designation of origin that such products emanate from NEW PIG and falsely create the impression that NEW PIG sponsors or approves of the ULINE products and falsely associates and affiliates ULINE with NEW PIG in violation of 15 U.S.C. §1125(a). The unauthorized use of marks that are identical to or almost identical to the **Pig Marks** in such a manner is intentionally designed to deceive prospective purchasers into believing that the ULINE products are identical to or almost identical to the **Pig Marks** are sold by, originate from, or are endorsed by NEW PIG. ULINE's use of marks that are identical to or almost identical to the **Pig Marks** is likely to deceive and has deceived consumers into believing that ULINE is in some way associated with, connected with, or related to NEW PIG. Such use is likely to harm the reputation and goodwill of NEW PIG.  ULINE's use of the **Pig Marks** as search terms, meta tags, keyword tags, and keyword ads creates an initial interest confusion among consumers as to the origin and/or affiliation of ULINE and ULINE's competing absorbent, spill control, and mat products and allows ULINE to improperly trade off and benefit from the extensive goodwill that NEW PIG has built up over decades in its **Pig Marks** and creating confusion, thus irreparably injuring New Pig.

40.     ULINE's unauthorized use of marks that are identical to or almost identical to the **Pig Marks** in interstate commerce has caused and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of ULINE with NEW PIG or as to the origin, sponsorship, or approval by NEW PIG of ULINE's products.

11

41.   Upon information and belief, ULINE has, with knowledge of the falsity of the designations of origin, descriptions, and/or representations used in connection with the sale of the ULINE Products, caused them to be advertised, offered, and sold in interstate commerce to the immediate and irreparable damage of NEW PIG and the public in violation of 15 U.S.C. §1125(a).

42.   Unless and until preliminarily and permanently enjoined by this Court, the acts of ULINE complained of herein will continue unabated, all to the continuing irreparable injury, damage, and detriment of NEW PIG, for which NEW PIG has no adequate remedy at law.

**COUNT III**
**DILUTION PURSUANT TO 15 U.S.C. § 1125(c)**

43.   NEW PIG repeats and realleges the averments contained in paragraphs 1 through 42 of this Complaint as if fully stated herein.

44.   Since as early as 1986, NEW PIG has been using the marks **PIG** and  in connection with its products and services in the industrial absorbent industry.  Since as early as 2012, NEW PIG has been using the mark  in connection with its products and services in the industrial absorbent industry.  Over the years, NEW PIG has spent tens of millions of dollars advertising and promoting its products in the industrial absorbent industry bearing the **Pig Marks**.  NEW PIG has thereby generated extensive goodwill in connection with its products and services and the purchasing public has come to know, rely upon, and recognize the **Pig Marks** as indicating a source of high-quality and reliable goods and services in the industrial absorbent industry.

45.      The **Pig Marks** became famous long before ULINE's unauthorized use and display of the infringing ULINE Marks.

46.      Such unauthorized activities by ULINE have blurred and are likely to continue to blur the distinctive quality of the **Pig Marks**.

47.      Such unauthorized activities by ULINE have tarnished and are likely to continue to tarnish the distinctive quality of the **Pig Marks**.

48.      ULINE's use of marks that are identical to or almost identical to the **Pig Marks** without license or permission has caused dilution of the **Pig Marks** and is likely to continue to cause dilution of the **Pig Marks** pursuant to 15 U.S.C. § 1125(c).   In addition, ULINE's use of the **Pig Marks** as search terms, meta tags, keyword tags, and keyword ads creates an initial interest confusion among consumers as to the origin and/or affiliation of ULINE and ULINE's competing absorbent, spill control, and mat products and allows ULINE to improperly trade off and benefit from the extensive goodwill that NEW PIG has built up over decades in its **Pig Marks** has caused dilution of the **Pig Marks** and is likely to continue to cause dilution of the **Pig Marks** pursuant to 15 U.S.C. § 1125(c).

49.      Unless and until permanently enjoined by this Court, the acts of ULINE complained of herein will continue unabated, all to the continuing irreparable injury, damage, and detriment of NEW PIG, for which NEW PIG has no adequate remedy at law.

**COUNT IV**
**UNFAIR COMPETITION PURSUANT TO 54 PA.C.S. § 1124**

50.      NEW PIG repeats and realleges the averments contained in paragraphs 1 through 49 of this Complaint as if fully stated herein.

51.      By committing the acts herein alleged, including the use in commerce of marks that are identical to or almost identical to the **Pig Marks** in connection with its absorbent,

spill kit, and mat products, ULINE has unfairly appropriated the registered **Pig Marks**, famous in this district, and the goodwill associated therewith, and its actions in doing so constitute, among other things, unfair competition and injury to NEW PIG's reputation, all in violation of the common laws and the laws of the Commonwealth of Pennsylvania, including at least 54 Pa.C.S. § 1124.

52.        ULINE's acts complained of herein have been carried out in bad faith and with full knowledge of NEW PIG's valuable rights in the **Pig Marks**.

53.        ULINE's use of the **Pig Marks** as search terms, meta tags, keyword tags, and keyword ads creates an initial interest confusion among consumers as to the origin and/or affiliation of ULINE and ULINE's competing absorbent, spill control, and mat products with malicious and reckless disregard of NEW PIG's rights in and to the **Pig Marks** and with the willful intention to trade on NEW PIG's reputation and goodwill and to cause dilution of the **Pig Marks**.  Exemplary and punitive damages are necessary by reason of ULINE's intentionally tortuous conduct which has and will continue to cause damage to the rights of NEW PIG in its **Pig Marks** and to the business reputation and goodwill of NEW PIG, and are necessary to deter future similar conduct by ULINE.

**COUNT V**
**COMMON LAW TRADEMARK INFRINGEMENT**

54.        NEW PIG repeats and realleges the averments contained in paragraphs 1 through 53 of this Complaint as if fully stated herein.

55.        ULINE's acts as complained of herein, including the unlawful, reckless, and intentional use of the **Pig Marks** as search terms, meta tags, keyword tags, and keyword ads to create an initial interest confusion among consumers as to the origin and/or affiliation of ULINE and ULINE's competing absorbent, spill control, and mat products, has been

intentionally undertaken in reckless and willful disregard for NEW PIG's common law trademark rights and designed specifically to trade upon the goodwill associated with the **Pig Marks** in this judicial district.

56.        Unless and until enjoined by this Court, the acts of ULINE complained of herein will continue unabated, all to the continuing damage and detriment of NEW PIG, for which NEW PIG has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

(a)        that this Court grant a Permanent Injunction pursuant to 15 U.S.C. § 1116, enjoining and restraining ULINE and its agents, servants, employees, sales representatives, distributors, subsidiaries, heirs, successors and assigns, and all other persons acting by, through, or in active concert with any of them, from directly or indirectly using the **Pig Marks** or any other marks, words, or names similar thereto which are likely to cause confusion, mistake, or to deceive;

(b)        that this Court grant a Permanent Injunction pursuant to 15 U.S.C. § 1116, enjoining and restraining ULINE and its agents, servants, employees, sales representatives, distributors, subsidiaries, heirs, successors and assigns, and all other persons acting by, through, or in active concert with any of them, from engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure NEW PIG's business reputation or to dilute the distinctive quality of the **Pig Marks**;

(c)        that ULINE be required to account to and pay NEW PIG for any and all profits derived from the sale of any products bearing the **Pig Marks** and/or any other mark confusingly similar to the **Pig Marks** and for all damages sustained by NEW PIG by reason of said acts of

infringement and unfair competition complained of herein and that said damages be trebled pursuant to 15 U.S.C. § 1117(b) and 54 Pa.C.S. § 1125(a) as a result of ULINE's willful violations of 15 U.S.C. § 1114(1)(a) and 54 Pa.C.S. § 1124, in an amount to be determined at trial;

(d)     that the Court award exemplary and punitive damages against ULINE by reason of ULINE's intentional and willful conduct in favor of NEW PIG;

(e)     that the costs of this action, together with reasonable attorney's fees, be awarded to NEW PIG pursuant to 15 U.S.C. § 1117(a); and

(f)     that NEW PIG be awarded such further relief as the Court shall deem just and appropriate.

## DEMAND FOR JURY TRIAL

NEW PIG hereby demands a trial by jury for all issues triable by a jury.

Respectfully submitted,

Dated:  June 17, 2016               By:  */s/Douglas M. Hall*                            

Alan G. Towner, Esq.
Douglas M. Hall, Esq.
PIETRAGALLO    GORDON    ALFANO
BOSICK & RASPANTI LLP
38th Floor, One Oxford Centre
Pittsburgh, PA  15219
(412) 263-2000
agt@pietragallo.com
dmh@pietragallo.com

*Counsel for Plaintiff, New Pig Corporation*